### WILLIAM JONES' CASE.

Court of Common Pleas. April, 1808.

*Wells' Notebook, 369.*

*Vandyke* and *Bayard.* First, the number of judgments discharged which were acted upon as still subsisting furnishes sufficient evidence to the court that the debtor has not been acted with as he ought before his freehold shall be taken from him. Second, the debtor asked for further time to exhibit his receipts in discharge of these judgments and of others, which was refused. Third, one of the inquisitors can neither read nor write. Of

course he had no judgment of his own and, unaided by others, could not have estimated the aggregate value of the different farms. Fourth, the variance of the opinion of the inquisitors as to the value of this property from the opinion expressed some months before by twelve men on an *elegit* process, that variance being very considerable. On this head it was remarked that nothing was more changeable than opinion; that the court did upon a variety of occasions call in the opinion of a new set of men, as particularly in the case of application for new roads and the value of the land condemned. If there was an objection made to the return, the court without hearing any reasons will order a new view and a second report to be made to them; that they will frequently go further. Fifth, that in these embargo times, the legislature not yet having interfered to prevent the collection of debts, the court will so direct the execution of process that no possible injury shall be done. Sixth, that in the present case, if the inquisitors have been correct in their opinions as to the value of the property, no injustice can be done to the creditors, because a new inquisition can be held, and the writs of *fieri facias* etc. can still go on and be returned with the proceedings of the new inquisitors to the next term. Thus no delay will occur to retard the recovery of the creditor's debts. On the other hand, if the inquisitors have erred in their opinions, an irreparable injury may be done to the debtor.

In behalf of the creditors, *Cooper* and *Robinson* contended that after striking off and deducting the amount of the judgments which were alleged to be satisfied, there remained more judgments than could be discharged in seven years by the property, according to the estimate made of it by the inquisitors. That as to the unlettered character of one of the inquisitors, it was no objection to him as a juryman or a referee, and could be none to him as an inquisitor. That several weeks' notice was given to Jones of the time of meeting, and a list of judgments intended to be produced before the inquisitors was furnished him at the same time; so that he had a sufficient opportunity, if he had chosen to improve it, to have collected his receipts.

PER CURIAM. BOOTH, C. J. The Court seemed to admit that where there was so material a variance between the estimate of the property made by the twelve men on the *elegit* process and the two men on the inquisition as to excite a reasonable doubt of the correctness of the opinion of the inquisitors, they might be induced to consider it as a reason for setting aside the inquisition. Upon the present occasion, however, they gave no opinion as to that point in its bearing upon the case before them; and

without expressing any opinion upon the other points made in the cause, they directed the inquisition to be set aside upon the ground of the judgments produced and acted upon greatly exceeding the true amount of what now appeared to be actually due. The Court, however, considered that Jones was not entitled to ask a postponement at the meeting of the inquisitors, having received before such sufficient notice of the time of meeting.